In our second case today, United States v. Moore, Mr. Byrne, good to see you again. Good to see you again, Judge. Come on. There we go. May it please the Court, my name is Jonathan Byrne. I'm here this morning on behalf of John Moore, the defendant below. Mr. Moore went to trial representing himself in front of a judge who had previously tried and convicted him while he worked for the United States Attorney's Office, who denied a motion to suppress that Moore had filed that was factually detailed without a hearing, and while requiring Mr. Moore to be shackled during the presentation of his case. The District Court erred in making all those decisions, and for any or all those reasons, this Court should vacate Mr. Moore's convictions. As to the recusal, I'll start there unless there are questions going elsewhere. This is an admittedly unusual situation in that the question of recusal came to this Court on a mandamus motion, actually two mandamus motions, the first one of which resulted in a published opinion from this Court, that one of the reasons it was denied was that there was relief that Mr. Moore could have after conviction if there was a conviction. And so that's why we're here today. And the standard when we're talking about whether a judge should recuse themselves from trial, actual partiality, actual bias is not required. The statute says that a judge shall disqualify themselves if impartiality might reasonably be questioned, and the standard is whether a reasonable or objective person would harbor doubts about impartiality. In this case, you have the background fact that Judge Conrad prosecuted and convicted Mr. Moore, and we've laid out in our brief various things that transpired during the trial that I think a reasonable, objective person would look at and cause doubts about the impartiality of the trial. And I think the best example of that, aside from the question of shackling, which is raised separately, was the handling of the evidence related to Mr. Mercado. He was the loss prevention specialist with Lowe's. He testified about some of the video that was recovered and reviewed by police as part of the investigation. Mr. Moore was cross-examining him. He was starting to get into areas that were beyond the scope of direct, and Mr. Moore had the forethought to sort of hold up and say, I haven't called you yet. You're a government witness. This was after Judge Conrad, beginning of the case, had said that Mr. Moore's case will occur after the government rests, and partly based on that, Mr. Moore decided to reserve his right to do his opening statement until after the government's case was done. So Judge Conrad at that point, with Mr. Mercado, said, go ahead, ask any questions of this witness. Go ahead and ask them now. But there was not a specific directive that this is the only opportunity you're going to have to ask these questions. So when Mr. Mercado's testimony was over and there was a break in the trial, the prosecution brought up this issue of whether he could be released. And Mr. Moore was like, well, you know, he's subpoenaed. I want him to testify. You know, I have questions for him. And this is when Judge Conrad then said, no, if a witness is going to testify, they're going to testify one time. So you get your cross and anything you have with respect to your case in chief. And Mr. Moore said, well, I'm not finished questioning Mr. Mercado. And Judge Conrad said, oh, you're finished with him. And so that prevented Mr. Moore from recalling Mr. Mercado. But then later in the case, Judge Conrad then said he would hear from Mr. Moore after the government rests putting on his case. So there was this back and forth about Mr. Moore's defense and how it could be presented. And I think a . . . So why . . . but just connect the dots for me. So why does the, like, entirely expected confusion with a pro se litigant in federal court suggest bias? I guess that I'm . . . I understand that, you know, discussion. What I don't understand is, like, how I then make the jump from that to bias. Because . . . oh, I take issue with the framing that this was confusion based on a pro se litigant. Mr. Moore recognized that he, as, you know, acting as his own attorney, was limited to cross-examining government witnesses based on what they testified to on direct, which is, you know, a common understanding of trial lawyers. It was Judge Conrad who injected this idea of, no, you're going to do it all at once, which I think is something a judge could allow a defendant to do. I don't think the judge can require a defendant to do. But how does that show bias? That's Judge Richardson's question. Because there's no basis for that. You think if you have a loss prevention officer on the stand and the defense lawyer says, I want to recall this person later, that a trial judge could not, in the exercise of its discretion to manage the trial proceedings, that a trial judge is prohibited from saying, whatever questions you have for this witness must be asked now. I'm not going to force this person to come back in a week. You think that's beyond the trial judge's discretion in managing and running a trial? I think that would be questionable. That's not what happened in this case. But the premise of what you're saying is there was no basis on which Judge Conrad could do this, right? And so does it turn on that? So if I thought that a trial judge has got a lot of leeway in how they run a trial and the efficiency of the trial and the manner in which it's operated, if I believed that to be true, hypothetically, then you'd agree this doesn't show bias. That's the predicate that's required to show bias. I don't think that it necessarily turns on that. But I think it's important to look at what Judge Conrad actually said here, which was not, when Mr. Moore said, oh, you're a government witness, I need to save that, Judge Conrad did not say, Mr. Moore, in order to make things move more efficiently, I want you to ask any questions you have of this witness. He said you could, but not that you're required to. And Mr. Moore, who had already been told your case is going to come after the government's case, who had made his decision to forego an opening statement until the government's case was over, was saving his case. And Judge Conrad did not require him to do otherwise until after Mr. Mercado was off the stand. And the theory, what you're asking us to say, is the reason Judge Conrad did that was because he had bad feelings about this guy from 20 years before. No, Your Honor. My position is that a reasonable and objective person observing that might have doubts about impartiality. And that is, I think, the best incidence that we have. But we also have, like, the incident involving the admission of Mr. Moore's prior conviction, one of the offenses he's charged with being a felon in possession of a firearm he did not stipulate to his prior record. So the government introduces a judgment that reflects his prior conviction that also reflects a consecutive sentence that was imposed at the same time for revocation of a term of supervised release. So that introduction happens. Mr. Moore objects. Judge Conrad does not let him explain the basis for his objection. He just overrules it. Mr. Moore eventually had to go through a third objection before he finally got a chance to explain the basis for his objection. Once he did, Judge Conrad was like, oh, you're right. This is not a prejudicial error, but it is a mistake, and the government needs to, I think the word he used was sanitize, that exhibit before the exhibits went back to the jury. And so, again, I think an objective. It was fixed. It was fixed, but it could have been fixed immediately when the jury had first. Timing is what caused you the problem. Were you the standby counsel? I was not, Your Honor. I wasn't in the courtroom. I wasn't even in the district. He was representing himself. Correct. And he had a. He did have standby counsel. I assume it was sitting beside him or back on the front row. I don't actually know the mechanics of that, Your Honor. But he did have standby counsel. And that, whoever that was, was supposed to be helping him out with the legal issues. They were. I don't think there's anything in the record specifically that shows them sort of jumping in, aside from presenting exhibits to the witnesses and things like that, which is relevant to the shackling issue. Yeah, your client was a layman. I mean, there's no question about that. Absolutely. He wanted to represent himself, and Judge Conrad let him do that. He did, yes. But he gave him a standby lawyer. He did. He did give him a standby counsel, yes. Move on to touching on the suppression issue. So Mr. Moore filed a motion to suppress evidence that was recovered from his home. And his motion was factually detailed as to what police officers did after they had arrived at the home and executed the arrest warrant. He made detailed factual claims that suggested that they engaged in an actual search of the home, not a protective sweep as would be allowed as sort of incident to executing the arrest warrant. The government's response was, well, this is a protective sweep, but even if it's not, here's this other basis for denying it. The district court did not hold a hearing to resolve any of those factual issues and instead denied the motion on the basis that this evidence would have been inevitably discovered. But in this sort of a situation, inevitable discovery is the wrong analysis. Independent source is the proper analysis when you're dealing with a potential illegal search and then a separate warrant that was executed later. Can I ask you just a quick question, sort of clarifying that? Certainly. Are we talking only about the evidence that was recovered in the second, the with warrant search? Do you know, is that what your client wants suppressed, the evidence that was found when they came back with the search warrant, or does he want suppressed the evidence that was found in the original either protective sweep or unconstitutional search? Certainly the evidence that was found as a result of the second search. The second search. I agree with you that as to the second. I think he would argue. Was that even introduced at trial, the evidence from the first? Well, yes, among the things that they seized with regard to the search warrant was the firearm. No, no, the search warrant, right, but the first, either the, call it the arrest search. Was that evidence introduced at trial? I really am just, because I think as to that evidence, you would be talking about inevitable discovery, but I'm not clear on whether anyone. I don't think any of that evidence ultimately was introduced. Yes, they seized some. The protective sweep didn't undercover any evidence. Wow. Is that what you're saying? It didn't. The so-called protective sweep. You don't agree that they were entitled to a protective sweep. When they executed the arrest warrant, they seized. They did a protective sweep. There was a reference to that. You just mentioned it. Well, that's disputed. Pardon? That's disputed. Well, no, but it was referred to by the court as a protective sweep or by the officers. By the officers, yes. Was there something seized in the protective sweep that they wanted suppressed? I don't think anything that was seized during that was. Well, you weren't even, there's motion to suppress, it had nothing to do with the protective sweep. Well, except that if it was not a protective sweep and it was an illegal search. Well, they're entitled to a protective sweep. They've got to protect themselves. They're entitled to do those things. Correct, Your Honor, but Mr. Moore's allegations. In lots of situations. Yes, but Mr. Moore. They've got to protect themselves and everybody there, the public. Yes, Your Honor, but Mr. Moore's allegations is that they were doing things like opening a safe and looking under mattresses and doing false searches. There was nothing seized during this particular so-called protective sweep that you were trying to suppress.  You being Mr. Moore. So I'm not trying to make arguments for you, although I have a tendency to do that. What about the, like, money and things that were found in his coat? Like, wasn't his allegation, and I'm just trying to recall, but his allegation was they found some money and things and a phone. Yes. And they then put them in a coat and then put the coat on him. Mm-hmm. Then allowed them to seize them when they got to jail. So wouldn't those have been things that are at least arguably seized during the alleged protective sweep? They were seized, but to Judge Harris's question, I don't think they were eventually. They didn't admit it. I didn't mean to, Your Honor. I don't think so. I did not mean to. I was just trying to figure out whether we're talking about independent source or not. Sure. But assuming we are talking about the evidence that was recovered when they came back the second time with the warrant, I understand your client's allegation to be they were not in the process of getting a warrant, a search warrant, until the officers learned what had been found during the contested protective sweep, and therefore the warrant is fruit of the initial illegal search, right? That's the basic allegation here. That's correct, Your Honor. Yes. They looked under the mattress. They found the gun, and that's why they decided to get a search warrant and come back to get that gun basically. Correct. Okay. All right. And then your allegation is the district court messed up because it made half of the findings you need for independent source. It found that they didn't rely on what they found the first time when they got the warrant, so the magistrate didn't have that information, but the district court neglected to find that what happened in the first search didn't affect the officer's decision to seek a warrant. That's the basic argument? That is the basic argument. Okay. I actually don't think the judge made either finding. Okay. But the first finding I think is clear from the record because we have the warrant application.  I just have one question. Actually, I totally understand your argument. Just as a practical matter, it seems like mostly with independent source cases, what we're worried about is a situation where it's really not obvious that the police would have gotten a search warrant, but is there any chance in the world that on these facts where they've just arrested and they have probable cause to arrest this guy for two armed robberies that were just committed, they pick him up, they take him to the station, no one has found the gun yet, that they're not going to get a search warrant to search the apartment where he was arrested to find the gun? Well, we don't know that, Your Honor, because there was never a hearing. Is there a world in which they don't come back with a search warrant? To be completely honest, I wouldn't have thought there was a world that they would have gone to arrest him and didn't have a search warrant in hand. That's my first question for your comment. But they didn't. Okay. And we know from the timeline. You've done this enough to know that's actually quite common. It is, but we don't know that it happened here. Right, but you were shocked to learn it. I was. In fact, that's more common than not. Yeah, I'd have to agree to that. Thank you, Your Honor. Thank you, Mr. Berg. You saved some time. Mr. Enright? Mr. Enright, I want to know, is that common? If the police are going to arrest him anyway, why didn't they check the box for search as well as arrest on the warrant application? That is pretty common, and I think it has to do with the logistics of how the police work. In this case, there are two teams. One team is tasked with arresting people and finding them, and there's another team that's tasked with investigating robberies. And that might seem like, I don't know, bureaucratic largesse or something like that, but I think the main concern is that one team is heavily focused on protecting the safety of a circumstance that can get pretty volatile, which is an arrest and a takedown, and another team is focused on investigating crime, and that separation is, I think, the reason for it. Okay. I mean, it does lead to exactly this problem, right? It does, Your Honor. And I want to get to that, but I do want to correct something. Candidly, the jacket and the phone and not the cash itself, but some testimony about the cash that were recovered during the time by that arrest team, those were introduced at trial, Your Honor. They were. Now, I don't believe that my friend raised it, and I think my friend's comments kind of corroborate that, also because to a point I think your question pointed to, inevitable discovery would be the only way to evaluate that evidence if you did what the court did, which is assume that there was some misconduct that led to it. We don't need to address that because we're dealing with inevitable discovery. Since it wasn't discovered twice, nobody says it was. It was discovered once. The officers testified to that, too, and there wouldn't be a way to say that there's an independent source. Independent source is generally what you apply when there's two, when evidence is discovered twice from two different sources, if they're independent. It's the independent source. All right, so then why isn't there a problem here? Because the district court, as to the gun, the only way that could come in, assuming that there was an initial illegality, and I understand you don't think there was, but assuming there was, as the district court did, how does the gun come in without the district court finding both that what happened during the initial illegality didn't make its way to the magistrate, which seems clear from the record, but also that it didn't affect the officer's decision to seek the search warrant? So I have two parts to that answer. The first is the court explicitly did find that on page 615 of the joint appendix. The evidence from the apartment will not be suppressed because it would have been inevitably discovered during the lawful execution of the search warrant. But I think the bigger question is. Wait, I'm sorry. How does that show that what was discovered in the first hypothetically or presumptively illegal search didn't affect the officer's decision to get a search warrant? Because if it had, then the court would have said it wouldn't have, the officers would not have discovered it during the lawful execution of the search warrant. Because there would have been no search warrant. Because they wouldn't have gotten the search warrant, exactly. And so when the court does that, when the court says it would inevitably have been found, that necessarily includes a finding that the court would have, that the officers would have obtained the search warrant. Because had they not obtained the search warrant, they wouldn't have discovered the evidence pursuant to its lawful execution. If you, like, shoved as much into those words as you could, as you've done, what would the evidence be that the judge relied upon to make that, what I'll call the motive determination, right, that sort of the officers would have gotten the search warrant regardless? So if you read it into those language, would have been discovered, like what evidence would the district court have been relying on? So there is some evidence because in connection, in our, in our, in our search, in our response we attached the search warrant. Our search warrant application said there's an ongoing investigation that began at the time we reviewed the videos. So there's evidence actually before the court that there was an ongoing investigation beforehand. There's also some. But that isn't much, right? So everybody knows there was an ongoing investigation. The question is, would they have searched this house? That's a fair point. Well, they have the location, too, because also in that application was we just arrested them here, and there's probable cause to believe there's evidence in that house. There's also evidence during the trial record, which this court can consider under its precedent, even if it's connection with the, with the, with the motion to suppress. But I think the bigger point is. Wait, wait, say, say, back that up again. You think we can look to the trial? Why can we look to the trial evidence to determine whether they would have gotten the search warrant absent the protective suite? It's evidence this court can consider when affirming a judgment on a motion to suppress. And is that, is that because we can consider it in determining whether there's an error? Yes. Or we can consider determining whether the error was harmless. I understand the latter proposition, right? We might look at the trial testimony and use a little bit of common sense and say there's no possible world they weren't going to get a search warrant. I understand that argument, but that's not the error argument, right? I don't understand how we could look at the trial testimony to determine whether the district court erred in either not finding or finding something without evidentiary support that the first search didn't affect the decision to seek the second search. In candor, Your Honor, I'm fuzzy on the rationale, but I'm actually pretty sure it's the first part. I'm pretty sure this court can consider trial evidence when evaluating the propriety of a motion to suppress. But I think that's. Do you have anything off the top of your head you want me to look at? A decision called United States v. Hahn, which unfortunately this citation I don't remember. That's fine. But I will. This is what. He'll find it. This is what 28J letters are I hope permitted for. I will fix that rectified error. Trevor will find it. Don't worry. But a bigger point is this court's precedent, and this I can give you some citations. We cited it in our brief even, allows the district court to resolve this issue on undisputed facts. And that specifically includes this part of the inevitable discovery and the independent source doctrine, which is the motive part. If we say the inevitable discovery doctrine applies or the independent source doctrine applies and the defendant doesn't contest it, although has an opportunity to do so, then the court doesn't need to address it. The court doesn't need to have a hearing to do that. That's what this court said in Hill. And the other decision, the more recent decision, is Bowman, where the United States representation went uncontested, also a pro se defendant, and the court said you don't need to have a hearing. It's within the court's discretion not to. Hill is one we cited, and it distinguished a couple of other decisions where the court only addressed the could part. Did the officers obtain a warrant without including the purportedly or allegedly tainted information in the warrant and didn't address the would they have done so part? And this court affirmed without addressing itself or requiring the district court to address the question of whether the officers were motivated by that, because it was uncontested. So you're referring because he files his motion to suppress, and then you guys raise inevitable discovery, and then in his reply he doesn't come back to that. Yes. He elected not to file a reply, but he filed about six other documents. I thought at that point he, like, changed his mind and went to, oh, is that why you went to the Franks issue? He did, and that's the thing. I think his strategy was he wanted to challenge the could part. He wanted to challenge the warrant, and he raised many, many very granular grounds about the warrant. There's a Franks hearing. There's a lack of particularity. He said that the warrants were forged and fabricated. I think that's what he wanted to. As my friend said, his allegations about what he alleged were very detailed. And to your point, Your Honor, this is not a situation where it would be at all easy to prove that they weren't motivated to do this. And his own motion to suppress identifies these two separate teams. One team went and arrested him. Another team went and it was the robbery team investigating the robbery and searched him later. And there's no allegation that they ever communicated a, hey, look, I found this evidence under the mattress. Go search and look under there. And, in fact, there's no allegation that that first team saw anything under the mattress, only that they searched the mattress. Is there any reason to think that a, you know, sorry. Doesn't he say they lifted the mattress? I heard them lift the mattress. He did say they lifted the mattress, but he didn't allege that they discovered anything. He says the gun was there and they lifted the mattress. He says the gun. You don't think we can infer that? Well, I think the challenge is that he didn't assert that that was ever communicated. There was another. He alleged there were two teams, so that was undisputed. Yeah. He never asserted that they communicated that information to the other team and caused them to go get the warrant. I thought he says, like, really specifically, I mean, I thought for a pro se motion, it's pretty good. He says they weren't in the process of getting, oh, God, I can't see because it's all, that they weren't in the process, they weren't actively trying to get a search warrant. They only did so after, now I can't read this, but after the illegally seized evidence. After they were shown the illegally seized evidence. Like, that's. I'm sorry, Your Honor, I may have missed something, but I totally didn't. Would you be willing to. 79, J79?  While I was in the investigation room, oh, my God, my eyes are so bad, and this is gray, and I have highlighting on it. The detectives came in, and I wouldn't consent. They tried to get my consent. Yes, I see what you're saying, Your Honor. Right. They weren't actively trying to get a search warrant. They only did so after they were shown the illegally seized evidence from my apartment. I think, I don't mean to be. Yeah. Equivalent, but I think what he's saying is they only did so after they was given the illegally seized evidence. The reason that's different is because the motion refers to the three items we were talking about before, which is the coat. Right, right, right. And the cell phone and the cash. Right. Now, I don't think this could reasonably be read as alleging that they saw the gun and the Nike jacket. That's fine, but either way, he's like very, earlier he says they looked under the mattress where I keep my gun. But, I mean, he's very clearly alleging, right, that this is a motive case because they weren't going to get a warrant until it was clear it was going to be worth their time. They were shown the evidence that was seized the first time, and that's when they decided to get the warrant. So, I mean, you're the judge, Your Honor. I don't see it that way, but I understand the point. I will emphasize in the light of that note that if you disagree with me on this, the remedy is in Campbell, which is I think you don't vacate the verdict. You just send it back for a hearing where the outcome determines whether the verdict gets vacated because that's something I do want to mention. But the, if it's okay, I'll move on to the recusal issue, which we've been here before on to an extent. The district court acted within its discretion. It ultimately did, this court identified the things that needed to materialize for a disputed issue of fact to come before the court. When those occurred, the court promptly recused, got rid of the case in its entirety. And the sort of trial issues that came up, you know, I do think the answer to Judge Richardson's question is no, a reasonable observer, whether those decisions were right or wrong, and I think every single one of them was well within the court's discretion. Right or wrong, I don't think an impartial observer would say not letting him recall that witness was because of something he learned in 1989, putting him in shackles, requiring him to wear shackles when he's committed seven undisputedly crimes of violence and is charged with crimes of violence and serious violent felonies was because of something he learned in 1989, or requiring us to sanitize an exhibit that I think was fully admissible was because of something he learned in 1989. I think, again, all those decisions were fine, and I think we've had, we have cases that support all of them, but even if not, that's something he could appeal, but not a basis for recusal. And, of course, he didn't raise those issues as a basis for recusal. So it doesn't comport with the timeliness requirement for recusal requests, and it would be subject to the plain error standard to the extent he asserts those. On the question of leg shackles, I mean, I think this court's precedent in Midgett and Williams is pretty much on all fours. If anything, the court went above and beyond what it needed to do to protect his due process rights. It either needed to keep the shackles invisible or make specific findings of security. They concealed that from the jury? What's that, Your Honor? They concealed it from the jury? Yes, Your Honor. The court made clear that it took steps to do that, that the courtroom was designed in a way where the shackles wouldn't be visible, made both parties give direct examinations and closing statements and opening statements from behind their tables. He had to sit out all the time? He could stand up. He could stand up? Yes. I don't think he could move around, but I think he could stand up because the court directed him to stand up when he's giving arguments and the like. And he had standby counsel to serve as his feet, as I think Judge Whitney said, and so did we. Was this in the Jefferson courtroom? It was in the Jefferson courtroom, Your Honor, and Judge Conrad was very proud about the fact that it was designed in a way that prevented shackles from being seen. So I think the court went, if anything, above and beyond what this precedent requires, well within the court's discretion, and it would be harmless in any event. And then on the Apprendi error, an alleged Apprendi error, as we mentioned in our 28J letter, regardless of the standard of review and candidly, regardless of the merits, I think the outcome is controlled by Brown because all of the convictions were more than five years apart, and at least four commissions were at least, I'm sorry, using the word all is not correct, at least three convictions were more than five years apart, and at least four commissions were at least five years apart. That evidence is overwhelming and uncontroverted, so it's harmless. I will address briefly the three strikes language because there's a pretty material difference between the language of the three strikes law and the Armed Career Criminal Act, which is the three strikes law focuses on convictions. And the fact of a prior conviction is still an exception under Almendarez-Torres, and Almendarez-Torres' explicit holding, as quoted by Erlinger, is that the timing of the conviction when compared to another event is still within the exception, and that's exactly what the three strikes law requires the court to determine. So until the Supreme Court overrules Almendarez-Torres, which I think some people have been waiting for for about 30 years at this point, I think the court properly applied the three strikes law, and there's no reason to even get to harmless error or plain error for that matter, and I don't think the standard of reviews is positive in this case, but I think Brown also makes clear that's something you have to raise at the time of the conviction, not solely at the time of sentencing. So if this court has no further questions, for the rest of it, I'm happy to rest on my briefs. Thank you, Mr. Enright. Thank you, Your Honor. Mr. Byrne. I want to start very quickly where Mr. Enright left off. When Brown came out and then when the government filed their 28-J letter last week, I did my best to try and figure out a way around it for Mr. Moore, but I just can't do it. So I agree that Brown pretty much resolves any of the sentencing issues here. I wanted to mention the standard of review, particularly on recusal, since Mr. Enright mentioned it. Government argues it should be plain error, but, I mean, here we have a situation where there was a pretrial motion to recuse, there was a post-trial or a second mandamus motion that was filed on the eve of trial. There really is nothing more Mr. Moore could have done to preserve that issue. Any motion that was filed afterwards obviously wouldn't have impacted the trial. So I don't think plain error is the correct standard there. On the suppression issue, I don't agree with my colleague that inevitable discovery applies even to the things that were seized during the initial search because the inevitable discovery is it would have inevitably been discovered because the warrant, when the search warrant was executed. But, of course, the whole question is whether the search warrant is valid. So I think it's all bound up in the independent source analysis, for which I think the burden of proof lies on the government to prove it applies and on Mr. Moore to prove it doesn't apply. Do you have a response to the concern that your colleague raised that when the government opposes the suppression motion based on inevitable discovery, Mr. Moore doesn't contest that. He kind of switches theories and goes after the warrant itself, saying it rests on false allegations and it's not particular enough. Mr. Moore did not directly address questions of inevitable discovery or independent source. I don't think that leads to any sort of a waiver or forfeiture because he made the initial request to the court to suppress on this basis, and the district court decided that issue. I wanted to talk very briefly about the shackling because I didn't get a chance to when I was up here the first time. This actually is one of those indications where what happened in 1989 was relevant because part of Judge Conrad's ruling on shackling was the nature of Mr. Moore's prior convictions. I'm not going to stand here and say that his prior convictions don't count as crimes of violence, given our categorical approach and the way that works, but there's no allegation in his history or in his conduct in this case that he's ever been disruptive in court, that he's ever been threatening in court. His prior convictions and this conviction as well basically involves the threat of violence, not actual violence, potentially the use of a weapon. The idea that he might get his hands on a weapon in a courtroom filled with court security officers and marshals borders on ludicrous. While the jury may not have been able to see the shackles physically, the fact that he could not participate fully in his defense, the presentation of his case the way the United States attorneys could, clearly signals to the jury that something is up. When the magistrate judge heard Mr. Moore's request to proceed pro se and did the phoretic colloquy, the magistrate judge said in explaining, you know, this is what you're going to have to do is that you're going to be expected to be treated like any other lawyer. And he wasn't. And so unless there are further questions, I'll rest on the briefs and ask that you vacate Mr. Moore's convictions. Thank you. Thank you, Mr. Burns. We'll come down and greet counsel and then take a short break. Is that OK? Of course. This honorable court will take a brief reset.
judges: Robert B. King, Pamela A. Harris, Julius N. Richardson